UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| TRACY GOOCH, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 3:20-cv-01001 |
| ELECTRIC POWER BOARD OF METROPOLITAN NASHVILLE AND DAVIDSON COUNTY d/b/a NASHVILLE ELECTRIC SERVICE, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

After providing loyal service for 36 years, hearing racial slurs over many years, and seeing reports of two nooses in the workplace, and getting passed over for a promotion after Nashville Electric Service ("NES") ranked him number one, Tracy Gooch ("Gooch") said enough is enough. He retired and brought this lawsuit. This case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. Gooch alleges a hostile work environment, failure to promote, retaliation and negligence. NES has moved for summary judgment that Gooch opposes. (Doc. Nos. 33, 38 and 39). For the reasons stated below, the motion will be granted in part and denied in part.

I. **MATERIAL FACTS**[1]

NES is an agency of the Metropolitan Government of Nashville and Davidson County.

---

[1] The material facts upon which the Court relies are drawn from the parties' statements of undisputed facts. (Doc. No. 38-1). NES chose not to respond to Gooch's Statement of Additional Facts, which are deemed admitted and true. Rule 56(e)(2) and Local Rule 56.01(f).

Gooch began working for NES as a custodian in February 1984, and held other positions, in the storeroom, meter department, and the facilities and security department. In 2010, he was promoted to Utilities Supervisor and remained in that position until he retired in September 2020.

In 2019, NES picked Chad Daniels, a white male younger than Gooch, for a Facilities Supervisor position. Tim Simons, Facilities Manager, selected the initial interview committee that consisted of Bryan Lillard, Starlis Keen, and Lisa Reasonover. The committee interviewed all four candidates, who were verified as qualified for the position. It ranked Gooch number one and Daniels number two. NES supervisors and employees believe that the selection process that resulted in Daniels' selection was tainted.[2] Indeed, many employees think that NES unilaterally changes the selection process for promotions. (See Doc. No. 38-1 at ¶ 23, 24). Tina Demoss, a NES Human Resources Specialist, believes the interview questions were not related to the position of Facilities Supervisor. She also maintains that the selection process did not give proper weight to Gooch's longer seniority at NES when compared to Daniels. The importance of Gooch's seniority was also noted by Camille Steward, a former NES Human Resources employee. After Daniels' selection, Gooch filed an internal grievance that was denied. He then filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in October 2019, alleging discrimination and retaliation based on his age and race. (Doc. No. 34-4). The EEOC issued a right-to-sue notice after which Gooch filed this action.

Soon after Gooch started working at NES until the year that he retired, he endured a continuous stream of racial remarks and incidents. These included a co-worker calling him a "nigger" (Doc. No. 38-1 at ¶ 15); slurs and comments about a drawing depicting an African-American being chased by a white man with a whip (Doc. No. 38-1 at ¶ 18); hearing from a co-

---

[2] Again, the Court notes that NES elected not to respond to Plaintiff's Statement of Additional Facts.

worker that NES supervisor, Tim Kinkead, used the N-Word (Doc. No. 38-1 at ¶ 19); and hearing his co-workers say: "Blacks need to stay in their place," "Need to have slaves again to make America great again," and "Your black ass doesn't need a promotion." (Doc. No. 38-1 at ¶ 20).

Gooch was in good company about experiencing racial treatment at NES. In fact, his co-workers also reported multiple racial slurs from NES supervisors and employees. For example, William Health heard a white co-worker call a nearby driver a "fucking N-Word." (Doc. No. 38-21 at 5). He also received a text stating "costs 10 cents which could feed a child in Africa for a day and starve a little [N-Word] for a week." (Id.). On one occasion, he was asked to stay in a co-worker's house where "his granddaddy used to have sex with the slaves," and was asked to teach another supervisor how "to talk Black." (Id.).

Also, during his time at NES, Gooch and other employees learned about a hangman's noose on NES property. (Doc. No. 38-1 at ¶ 17). On yet another occasion, a noose was found hanging near the break area at the NES Donelson Center, which Gooch received a photo of from his co-worker Timothy Jones. (Id. at ¶ 21).

Even during the world-wide pandemic, Gooch says that NES mistreated him due to his race. In 2020, Gooch requested to work from home due to COVID-19. Simons frequently approved white employees to work from home. He denied Gooch's request. A few days later, Gooch tested positive for COVID-19.

## II. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where there is "evidence on which the jury could reasonably find for the plaintiff." Rodgers v. Banks, 33 F.3d 587, 595 (6th Cir. 2003) (quoting Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 252 (1986)).

At the summary judgment stage, the movant "has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Id. If the movant meets its burden, the non-moving party must "show specific facts that reveal a genuine issue for trial" to survive summary judgment. Laster v. City of Kalamazoo, 746 F.3d 714, 726 (6th Cir. 2014).

When evaluating a summary judgment motion, the Court must view the record "in the light most favorable to the non-moving party," and "draw all reasonable inferences in [that party's] favor." Id. The Court "may not make credibility determinations nor weigh the evidence" in its analysis. Id.

III. ANALYSIS

    A. Hostile Work Environment Under §§ 1981, 1983, Title VII and ADEA.

        1. §§ 1981 and 1983 Claims

Under 42 U.S.C. § 1981 "persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts…as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." § 1981(a). The Supreme Court has held that § 1981's cause of action does not extend to state actors. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1973). However, § 1983 creates a cause of action for persons deprived of any civil right, including the "rights guaranteed by § 1981." See Arendale v. City of Memphis, 519 F.3d 587, 595 (6th Cir. 2008) (quoting Jett, 491 U.S. at 733). A plaintiff has one year to file a § 1983 claim. Carter v. Kulp, 2021 WL 1061846 at *4 (M.D. Tenn. 2021). A claim under Title VII is timely if filed within 300 days

4

of any single act contributing to the hostile work environment. See Morgan, 546 U.S. at 117.³ Gooch has timely filed under § 1983. He alleges hostile work environment from 2019 until the date he filed his complaint on November 20, 2020. He is entitled to support his hostile work environment claim with evidence of incidents occurring before he filed a charge of discrimination under the continuing violation doctrine. Wu v. Tyson Foods, Inc., 189 Fed. Appx. 375 (6th Cir. 2006).

Gooch's hostile work environment claims under § 1981 and § 1983 are not time-barred under the continuing violation doctrine. (Doc. No. 38 at 15; Doc. No. 34-4 at 1). The doctrine allows claims to proceed if a victim alleges an "unlawful practice that continues into the limitations period." Haithcock v. Frank, 958 F.2d 671, 677 (6th Cir. 1992). Because hostile work environment claims "involve repeated conduct" and require the plaintiff to establish an abusive working environment, if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered…" Wu, 189 Fed. Appx. At 375 (citing National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 115-17 (2002)). The summary judgment record supports application of the continuing violation doctrine.

Under §§ 1981, 1983, and Title VII employees are protected from a "workplace permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); see also Jackson v. Quanex Corp., 181 F.3d 647, 658 (6th Cir. 1999) ("Conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive."). To survive summary judgment, Gooch must proffer admissible direct

---

³ A § 1983 claim is reviewed under the same standard as Title VII claims. See Johnson v. Univ. of Cincinnati, 215 F.3d 561, 575 (6th Cir. 2020).

or circumstantial evidence of discrimination. The McDonnell Douglas framework applies to evaluate Gooch's circumstantial evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Texas Dep't of Cmty. Aff. v. Burdine, 450 U.S. 248, 252-53 (1981). He must first demonstrate that (1) he belongs to a protected class; (2) he was subject to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable. Barrett v. Whirlpool Corp., 556 F.3d 502, 515 (6th Cir. 2009) (citing Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir. 1999)). Ultimately, Gooch must prove that NES "tolerated or condoned the situation" or that NES knew or should have known of the alleged conduct and failed to take prompt action." Davis v. Monsanto Chem. Corp., 858 F.2d 345, 349 (6th Cir. 1988).

Generally, the fourth prong is analyzed under the "totality of circumstances" with some exceptions. Thornton v. Fed. Express Corp., 530 F.3d 451, 455 (6th Cir. 2008); see Harris, 510 U.S. at 23 (must consider frequency of conduct, its severity, whether it is physically threatening or humiliating, or a mere utterance, and whether it unreasonably interferes with work performance); see also Abeita v. TransAmerica Mailings, 159 F.3d 246, 249 (6th Cir. 1998) (instances of harassment of other employees is irrelevant if there is no evidence that plaintiff was aware of them); Barrett, 556 F.3d at 516 ("[O]nly harassment that specifically targeted those who associated with and advocated for African-Americans will result in an actionable claim."). An employer is vicariously liable for a hostile work environment created by a supervisor or manager with immediate authority over the employee, or the acts of co-workers if the employer knew or should have known of the conduct, and its response manifested "indifference or unreasonableness." See Quanex Corp., 191 F.3d at 663 (citing Burlington Indus., Inc. v. Ellerth,

6

524 U.S. 742 (1998)).

The Sixth Circuit has explained that comments need not always be addressed toward the employee to establish a hostile work environment. See Quanex Corp., 191 F.3d at 660. If the conduct which forms the basis of the employee's claim is not directed toward him or her, it diminishes the severity. See Ladd v. Grand Truck W. R.R. Inc., 552 F.3d 495, 501 (6th Cir. 2009). Indeed, comments or conduct that the plaintiff had no knowledge of cannot contribute to his work conditions. Barrett, 556 F.3d at 515; see Armstrong v. Whirlpool Corp., 363 F. App'x 317, 329-30 (6th Cir. 2020) ("[D]istrict court correctly excluded evidence of discrimination that [a plaintiff] neither witnessed nor learned of outside the context of this litigation.").

NES only contends Gooch has not satisfied the fourth prong of the analysis. (Doc, No. 33 at 12-15). The Court disagrees. Viewed in the light most favorable to Gooch, the record shows that a jury could find that he was subjected to ongoing racial slurs and incidents for many years continuing through the one-year period preceding the filing of this lawsuit. But here, NES has failed to present any evidence of its remedial action.

Quanex Corp. supports the Court's conclusion. 191 F.3d at 664. There, an employee alleged she suffered a racially hostile work environment after feeling offended by racial graffiti and slurs by co-workers. Id. at 663. Although she did not report every instance of graffiti and slurs, other African-American employees did. Id. Indeed, a supervisor admitted his awareness of such graffiti and conduct. Id. Despite this, management dug in their toes and made no effort to discover the perpetrators. Id. Consequently, the harassing conduct continued during the employee's work tenure. Id. Taking all the circumstances into consideration, the Sixth Circuit found that the employee offered enough evidence that the environment unreasonably interfered with her work and the employer knew or should have known. Id.

As in Quanex Corp., 191 F.3d at 664, when Gooch began his employment with NES until he retired, racial slurs, comments and epithets were common. (Doc. No. 34-1). He heard the N-Word, repeatedly. He learned about a drawing depicting an African-American man being tortured by a white man. (Doc. No. 38-1 at 9). Gooch then learned that a supervisor used the N-Word, (Id.) and a co-worker. (Id. at 8.) He has also heard NES officials and workers say that we "need to have slaves again to make America great again," "Blacks need to stay in their place," and "Your black ass doesn't need a promotion." (Doc. No. 38 at 18).

When Gooch filed a grievance about work conditions and his failure to be promoted, he alleged that NES failed to take prompt action to investigate his concerns. (See Doc. No. 38-14). It appears that NES conducted an investigation, but viewing the evidence in favor of Gooch, there is conflicting testimony on whether the investigation was done properly and by who. (See Doc. Nos. 38-13, 38-15). Indeed, Camille Steward [a former HR employee] testified Gooch's grievance "wasn't my investigation" but Herb DeBerry [the HR Vice-President] testified Steward told him that there was no discrimination. (Doc. No. 15, 13).

The most disturbing pieces of evidence are the nooses found on NES property. They were found in 2007 and 2019. While the Supreme Court has explained that "simple teasing, offhand comments, and isolated incidents" do not amount to discrimination under Title VII, see Faragher v. City of Boca Raton, 525 U.S. 775, 788 (1998), repeated incidents without any effort to discover the perpetuators do not qualify as isolated. It is clear beyond any reasonable debate that a noose is severe physically and mentally threatening for anyone, especially for African-Americans. Unquestionably, NES was put on notice in 2007, yet here failed to offer evidence of how it sought to rectify the work environment for African-American employees. Surely, NES was made aware once again when a noose was found in 2019 at the Donelson Service Center. (Doc. No. 38-1 at

8

10). When the totality of this evidence is considered, it provides a basis for a reasonable jury to find NES liable. Indeed, given that NES has failed to respond to Gooch's "Statement of Additional Facts," the Local Rule 56.01(f) and Federal Rule of Civil Procedure 56(e) require the Court to take Gooch's factual assertions as true. See Fed. R. Civ. P. 56(e); L.R. 56.01(f). With this in mind, Gooch's hostile work environment claim under § 1981 and § 1983 passes summary judgment and will proceed to trial.

    2. Title VII and ADEA Claims

To obtain relief under Title VII an employee must first file an administrative charge of discrimination with the EEOC. Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 361 (6th Cir. 2010); see 42 U.S.C. § 2000e-5(e)(1). A Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge, which must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b); see § 2000e-5(f)(1). However, because employees, not law school graduates, usually file EEOC charges, their complaints are "construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the charge." Younis, 610 F.3d at 362. When facts related to the EEOC charge would prompt the EEOC to investigate a separate, uncharged claim, the plaintiff is not barred from bringing suit on that claim. See id.; Davis v. Sodexho, 157 F.3d 460, 463 (6th Cir. 1980).

Gooch's hostile work environment claims under Title VII and ADEA do not reasonably relate to or grow out of his factual allegations in his charge of discrimination. Younis supports the Court's conclusion. There, an employee filed an EEOC charge but did not allege a claim of hostile work environment. Younis, 610 F.3d at 362. The employee only listed three to four isolated comments by his peers that occurred over a three-year timeframe. Id. The Sixth Circuit found that the employee's complaint exceeded the scope of his EEOC charge because the hostile work

9

environment claim could not be reasonably inferred from the complaint. See id. ("[E]vidence cited in an EEOC charge to support a claim of disparate treatment, will not also support a subsequent, uncharged claim of hostile work environment 'unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge.'") (quoting Cheek v. W. & S. Life Ins. Co., 31 F.3d 497, 503 (7th Cir. 1994) (hostile work environment cannot be reasonably inferred from alleged facts based on sex discrimination)).

The Court will dismiss Gooch's Title VII and ADEA claims. In his charge, he only alleged age and race discrimination when he applied to be the Facility Supervisor and a "white younger employee with less experience was selected for the position." (Doc. No. 34-4 at 1). He said he "complained to Human Resources and management, but no corrective action was taken." Id. The narrative portion makes no reference to a hostile work environment. See id. There is nothing in the charge that could be interpreted as alleging a hostile work environment. Critically, there is no language that would have put EEOC on notice that Gooch was alleging a hostile work environment at NES. Younis, 610 F.3d at 363. Accordingly, Gooch has not exhausted his administrative remedies and is precluded from pursuing hostile work environment under both the ADEA and Title VII.

  B.  <u>Failure To Promote Claim under §§ 1981, 1983, Title VII and ADEA</u>

Gooch challenges NES' decision not to promote him. Again, without direct evidence, he must proceed using circumstantial evidence. See Grizzell v. City of Columbus Div. of Police, 461 F.3d 711, 719 (6th Cir. 2006). Gooch's promotion claim will survive summary judgment if he establishes a prima facie case, combined with sufficient evidence of pretext that permits a finding of unlawful discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

10

Case 3:20-cv-01001   Document 41   Filed 06/17/22   Page 10 of 19 PageID #: 1153

1. §§ 1981, 1983, and Title VII Claims

As an African-American male protected under Title VII, § 1981, and § 1983, Gooch set forth facts showing that he was qualified for the Facilities Supervisor position. The only dispute here is whether Gooch is similarly situated to Daniels. The Court concludes that he is.

NES contends Daniels is not similarly situated because he has "extensive hands-on experience and training with the access control and security camera systems that the Facilities Supervisor would be overseeing on a daily basis." (Doc. No. 33 at 3). But this argument relates to Daniels' qualifications not whether he is similarly situated to Gooch. Regardless, the summary judgment record and NES' failure to respond to Plaintiff's Additional Statement of Facts makes both the relative qualifications of Gooch and Daniels, as well as whether they are similarly situated, a factual dispute for the jury to decide.

Whether Daniels is similarly situated to Gooch depends, in part, upon whether the two share the same supervisor, job standards, conduct, and other relevant aspects of employment. See Perry v. McGinnis, 209 F.3d 597, 601 (6th Cir. 2000) (citing Mitchell v. Toledo Hospital, 964 F.2d 577, 583 (6th Cir. 1992)); see also Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (noting the fourth prong only needs relevant similarity); e.g., White v. Columbus Metro. Hous. Auth., 429 F.3d 232, 243 (6th Cir. 2005) (must show person outside protected class had similar qualifications). Gooch satisfies this standard. The summary judgment record permits an inference that NES' interview committee found that both Gooch and Daniels were eligible for the promotion. Moreover, Gooch dealt with the "same supervisor, standards and conduct." Perry, 209 F.3d at 601.

NES' reliance upon Leadbetter v. Gilley, 385 F.3d 683, 691-92 (6th Cir. 2004) is misplaced. There, a white employee asserted reverse race discrimination, but the Sixth Circuit

applied a different, higher legal standard for the white employee to satisfy the similarly situated requirement. The burden is onerous for that reason and it is not present here. On the summary judgment record, the Court concludes that the jury needs to decide whether Daniels and Gooch are similarly situated.

Turning to the issue of qualifications for the promotion, NES' reliance on Daniels' experience and training to justify his selection must be weighed by the jury against Gooch's longer seniority and being ranked over Daniels for the promotion. (See Doc. No. 38 at 8). In doing so, the jury will need to consider why evidence that Simons' interview questions about access control and security camera systems, which favored Daniels, are, ironically, nowhere in the written job duties for Facilities Supervisor. (Doc. No. 38-3). Instead, the written job duties stress that the supervisor should have a wide range of experience, including overseeing and assigning work in those areas. (See Doc. No. 38-10, deposition of Lisa Reasonover stating the supervisor would be responsible for major building systems such as HVAC, electrical, plumbing, carpentry, and building automation).

Likewise, for the interview process itself, the jury might well discredit Simons' testimony - who led the promotion interview process - and discredit Simons' and Kindead's testimony (who both prepared questions to ask the candidates). Both may have a credibility problem because Kinkead was alleged to have used the N-Word to another employee and Simons, according to Gooch, has animus against him because of his race. In fact, the evidence suggests that Simons' hands are far from clean. (Doc. No. 1 at ¶ 63). During the tremulous March of 2020, NES allowed white employees, including Daniels, to work from home due to COVID-19. But when Gooch made the same request, Simons did not even give Gooch the courtesy of a "no." Gooch contracted the virus only two days later.

The jury's work will not be easy because there will be evidence that Gooch filed a grievance against Simons when Gooch was not promoted to Facilities Supervisor. There is conflicting testimony about whether Gooch's grievance was adequately addressed and by who. Simons denied the grievance and Gooch later appealed to DeBerry. DeBerry believed that Steward investigated the grievance and found no indication of discrimination. (See Doc. No. 15 at 21-22). However, Steward testified that the investigation was not assigned to her. (See Doc. No. 13 at 31). And if she did investigate, Demoss believed that Steward's investigation was poor. (See Doc. No. 5 at 47). Given the record, as discussed above, Gooch's promotion claim is in no way appropriate for disposition on a motion for summary judgment.

But there is more for the jury to weigh at trial. Tina DeMoss will testify that the interview process itself was problematic. She told Steward that the interview questions did not follow the job description and it was not fair to ask technical questions (regarding access control and security camera systems) because that was not the primary duty of a Facility Supervisor. (See Doc. No. 38-5). Steward was so concerned that she emailed Simons as follows:

> "Hi Tim. I am in the process of speaking with individuals on your panel, the specialist, and I am comparing the notes/scores. There are some concerns about the fairness of the interview that were brought to my attention. The scoring is also questionable."

(Id. at 42). It will be up to the jury to determine what her email means and reveals about the promotion process.

When all the proof is presented at trial, the jury will assess the credibility of NES' officials and employees and adjudicate the ultimate factual issue – whether intentional race discrimination infected the selection of Daniels.

    2.    <u>ADEA Claim</u>

The ADEA prohibits an employer from failing or refusing to hire, discharging, or

13

Case 3:20-cv-01001 Document 41 Filed 06/17/22 Page 13 of 19 PageID #: 1156

discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's age*." 29 U.S.C. § 623(a)(1) [emphasis added]. Gooch relies entirely on circumstantial evidence for his age-based failure to promote claim, Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009). Gooch must provide evidence on which a reasonable jury could find that age was the but-for cause when he did not receive the promotion. He has come nowhere close to doing so. There is nothing in the record that would allow the Court to make an informed analysis of this claim, so it must be dismissed.

C. Disparate Impact under Title VII.

Gooch seeks relief under Title VII relying upon a disparate impact theory. To be sure, Title VII prohibits employment practices that are facially neutral but operate as "built-in headwinds" for specific groups and are unrelated to "measuring job capability." Griggs v. Duke Power Co., 401 U.S. 424, 433 (1971); see Raytheon Co. v. Hernandez, 540 U.S. 44, 52 (2003). To establish a prima facie disparate impact case, a plaintiff must proffer admissible evidence of (1) a specific employment practice and (2) statistical evidence that the challenged employment practice caused an adverse impact on a protected group. Phillips v. Gates, 329 Fed. Appx. 577, 581 (6th Cir. 2009); see Grant v. Metro. Gov't of Nashville & Davidson Cnty, 446 Fed. Appx. 737, 741 (6th Cir. 2011) (Title VII "clearly requires plaintiffs to identify and isolate specific employment practices" and a plaintiff may challenge the process as a whole "only if he first demonstrates that its elements are incapable of separation"). When employment promotion practices are at issue, "the relevant inquiry is comparing the number of protected group members benefitting from promotions with the number seeking them; this figure is then contrasted with the corresponding ratio for the non-protected group." See id. at 399. After the plaintiff offers statistical evidence, the burden shifts to the employer to establish a "business necessity" related to the challenged practice. Griggs, 401

U.S. at 432. When the employment practice cannot be shown to relate to the job position, it is prohibited. See id. "If the employer succeeds, the plaintiff must then show that other tests or selection protocols would serve the employer's interest without creating the undesirable discriminatory effect." Campbell v. Hines, No. 12-4329, 2013 WL 7899334, at *11 (6th Cir. Aug. 8, 2013) (quoting Isabel v. City of Memphis, 404 F.3d 411 (6th Cir. 2015).

Gooch's disparate impact claim falls short because he failed to identify and isolate a specific employment practice related to promotions. (Doc. No. 38 at 11-13). He makes four separate allegations without offering any analysis on how they affect the promotion process. See id.; Campbell, 2013 WL 7899334 (a plaintiff must "identify and isolate the effects of each specific employment practice"). Indeed, Gooch alleges that (1) the "NES environment was toxic, hostile, and racially discriminatory," (2) the "interviewing panel disproportionately scored the African-American candidates substantially lower than the white candidate, Chad Daniels," (3) a "NES manager engaged in racist behavior that negatively impacted the African-American employees working under that manager," and (4) "Black employees at NES were disproportionate[ly] and negatively impacted by NES' promotion practices." See id. The problem is that, for each of these, Gooch has presented no evidence on their individual discriminatory impacts. See Grant, 446 Fed. App'x at 740 (plaintiff's failure "could have been forgiven if they had demonstrated to the court that the elements of the decision-making process are not capable of separation for analysis"). He cites the narrative testimonies concerning the racially discriminatory treatment of Timothy Jones, Thomas Caruthers, Marvin Sain, and William Health, but he does not present or examine actual statistical data as the law requires. See Raytheon Co., 540 U.S. at 52. Jones testifies that a supervisor [Huffines] "has harassed me and other Black employees in the past because we are Black." Jones also says the NES work environment is hostile and "racially discriminatory"

15

Case 3:20-cv-01001   Document 41   Filed 06/17/22   Page 15 of 19 PageID #: 1158

rendering it difficult "for us to get promotions." (Doc. No. 38-11 at 77). Caruthers corroborates Jones' testimony explaining that NES' work environment is "toxic." (Doc. No. 38-12 at 53). However, neither Jones nor Caruthers present any relevant data. On the other hand, Sain merely focuses on race-related incidents that have occurred during his work tenure. Because Gooch has not presented admissible statistical evidence on how a specific promotion practice has disparately impacted African-Americans, his claim under Title VII must be dismissed.

D. Retaliation under Title VII

Title VII makes retaliation an unlawful employment practice when an employee has "opposed any practice" made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. § 2000e-3(a); see Spengler v. Worthington Cylinders, 615 F.3d 481, 491-92 (6th Cir. 2010) (applying the McDonnell Douglas framework to a retaliation claim). Gooch has not presented any direct evidence, so he must initially proffer admissible evidence that shows: (1) that he engaged in a protected activity under Title VII, (2) the exercise of protected rights was known by NES, (3) NES took adverse employment action against Gooch, and (4) there was a causal connection between the adverse employment action and the protected activity. Taylor v. Geithner, 703 F.3d 328, 336 (6th Cir. 2013); see also Univ. of Texas Sw. Med. Ctr. V. Nassar, 570 U.S. 338, 362 (2013) (to establish the fourth prong, the plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."). Under McDonnell Douglas, if Gooch establishes his prima facie case, then the burden shifts to NES to articulate evidence of a legitimate, non-discriminatory reason for its action. McDonnell Douglas, 411 U.S. at 802. If the NES does so, then the burden shifts back to Gooch to show the proffered reason was pretextual. Id. at 804.

Gooch asserts he engaged in protected activity when he: (1) joined a class action race discrimination lawsuit against NES in 2007, (2) filed a grievance when NES denied him a promotion due to his race, (3) filed a second grievance alleging failure to promote due to his race, and (4) complained when NES denied him the opportunity to work at home during the pandemic due to his race. (Doc. No. 38 at 19-20). NES does not contest that it knew of his protected activities, however, NES does challenge whether it took materially adverse action against him because of his protected activity. (Doc. No. 38 at 20).

There is no admissible evidence that the "but for" reason for Plaintiff's alleged adverse employment actions are connected to his protected activity. First, except for his participation in the 2007 class action and the first grievance, the protected activities relied upon by Gooch in fact occurred after he was denied a promotion. It defies logic that they could support a retaliation claim because they happened **after** NES' decision to hire Chad Daniels. (See Doc. No. 33 at 16).

Second, his participation in the 2007 class action and his first grievance lack a temporal proximity to NES' decision to deny him a promotion twelve years later. For him to establish a causal connection, he must "produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in the activity that Title VII protects." Abbott v. Crown Motor Co., 348 F.3d 537, 543 (6th Cir. 2003); see Nguyen v. City of Cleveland, 229 F.3d 559, 555-56 (6th Cir. 2000) (the plaintiff's burden is minimal, requiring some evidence to deduce a connection between the retaliatory action and the protected activity). While close temporal proximity is not an absolute legal prerequisite to succeed, the Sixth Circuit has held that "more evidence is required only when some time is passed." Taylor, 703 F.3d at 339 (citing Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008). Although NES knew of Gooch's activities in 2007, (see Doc. No. 38 at

17

19-20), the time elapsed between his actions and NES' failure to promote, demonstrates that Gooch needs additional admissible evidence of a causal connection. On this record, Gooch has failed to present any. Therefore, the Court finds that Gooch has failed to show a prima facie case of retaliation.

  E.  Negligence

Gooch asserts that NES was negligent in "failing to properly supervise its employees and protect Plaintiff and other employees from their racial comments." (Doc. No. 38 at 21). The parties dispute as to whether this claim is timely.

Tennessee has a one-year statute of limitations for actions for "injuries to the person." T.C.A § 28-3-104(a)(1)(A) (2017). To establish a claim for negligence, plaintiff must provide admissible evidence of (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. See Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993). Here, almost all of Gooch's allegations are time-barred because they happened years, if not decades, before he filed his complaint on November 20, 2020. (Doc. No. 1). In fact, the Court concludes the only possible timely claim relates to the 2020 noose found at the Donelson Service Center that Gooch only saw because a co-worker sent him a picture of the noose. This claim fails because Gooch cites no legal authority that NES had a legal duty to prevent a co-worker from sending a picture to him. See Bradshaw, 854 S.W.2d at 870 (quoting Lindsey v. Miami Development Corp., 689 S.W.2d 856, 858 (Tenn. 1985) ("A decision by the court that, upon any version of the facts, there is no duty, must necessarily result in judgment for the defendant.")).

**IV. CONCLUSION**

For the reasons outlined above, NES' Motion for Summary Judgment (Doc. No. 33) is

18

granted in part and denied in part.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE